**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

ANTHONY HUNT                                                      PLAINTIFF

V.                                            4:06CV00026JMM

UNION PACIFIC RAILROAD                                            DEFENDANT

<u>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**</u>

Pending is Defendant's Motion for Summary Judgment.  Plaintiff has responded.  For the

reasons set forth below, the Motion is GRANTED.

<u>Facts</u>

Union Pacific hired Plaintiff Anthony Hunt as a laborer in 1992 and later promoted him

to Electrician in 1996.  In December 1993, Plaintiff was suspended fifteen (15) days for an

altercation with a co-worker.  The majority of Plaintiff's problems with his co-workers began in

late 2003 after he complained that some of the other employees were playing radios too loudly

on music stations that he did not like.  No one at Union Pacific ever told Plaintiff that he could

not bring his own radio to work.

Plaintiff's complaints to his co-workers about their radios escalated on December 23,

2003, into an argument with Boilermaker Steve Gunter.  After an investigation by management,

Assistant Director of Operations Paula Corpier issued a Manager's Conference Letter to both

Plaintiff and Mr. Gunter.  The Manager's Conference Letter states that failure to meet the listed

expectations may result in disciplinary action.

On February 5, 2004, Director Bill Jacobs issued Plaintiff another Manager's Conference

Letter for his alleged disruptive and insubordinate behavior at a meeting.

On January 12, 2005, Plaintiff pulled an extension cord attached to a radio from the wall

and cut it into two pieces.  Director Jacobs again only issued Plaintiff a Manager's Conference Letter for the incident.

Second Shift Manager John Givens held a meeting with the Second Shift Boiler Shop employees and informed them radios were no longer allowed.  After the meeting, Plaintiff commented to Manager Givens that "it was going to be on" if anything happened to him or his stuff.  Mr. Givens informed Plaintiff he should not take matters into his own hands but let management deal with any issues.  Based on these events, Mr. Givens and Ms. Corpier made the decision to send Plaintiff home, with pay, for that evening and the next day.  No other employees were sent home.  When Plaintiff returned to work on February 7, Union Pacific management met with each employee in the Boiler Shop individually to stress the need to behave professionally and respectfully with co-workers.

On February 24, 2005, Union Pacific received two anonymous calls on its EEO Hotline complaining that management was not doing enough to address Plaintiff's safety and behavioral issues.  One of the complaints alleged that Plaintiff was verbally abusive and had physically threatened two co-workers.  In response, Union Pacific assigned additional managers from the first shift to assist with the second shift to monitor any and all issues that might arise.  These additional managers observed and reported several issues, some of which had nothing to do with Plaintiff.  The managers did observe performance and attitude issues associated with Plaintiff as well.

On April 7, 2005, there was an incident between Boilermaker Don Fox and Plaintiff. Plaintiff asked a supervisor to have Mr. Fox stop welding on a particular locomotive while Plaintiff disconnected the batteries.  Mr. Fox resumed welding before Plaintiff completed the

work, which resulted in smoke in the nose of the cabin where Plaintiff was working.  Plaintiff complained to a manager that Mr. Fox had intentionally started welding again knowing Plaintiff was in the locomotive and Mr. Fox denied that he knew Plaintiff was still in the locomotive.  Mr. Fox and Plaintiff then got into a verbal argument.  The end result was a conference on April 14, 2005, with Mr. Jacobs, Ms. Corpier, Mr. Givens, Mr. Fox, Plaintiff and their union representative.  Both Plaintiff and Mr. Fox were counseled that their behavior toward one another was unprofessional and any further incident would lead to discipline under Union Pacific's UPGRADE discipline policy.

On May 12, 2005, Plaintiff was again involved in an altercation with Mr. Fox and Boilermaker Kevin Chastain.  Plaintiff alleges that Mr. Fox intentionally  spit or poured water or backwash near where he was working and Mr. Fox denied it.  Based on this incident and the failure of Mr. Fox and Plaintiff to correct their behavior, Union Pacific charged Mr. Fox, Plaintiff and Mr. Chastain with violation of Union Pacific rules regarding being quarrelsome, being discourteous, negligence, safety, insubordination, respecting Union Pacific property, complying with instructions, altercations, and acts of hostility.  Based on these charges, all three employees were pulled out of service pending the formal investigation.

Violation of these rules carried a penalty of a Level 5 on Union Pacific's UPGRADE discipline policy, which is termination.  Pursuant to the applicable collective bargaining agreements, these employees were entitled to an investigation hearing, with union representation, to develop the facts associated with the charge.  Union Pacific offered both Plaintiff and Mr. Fox the opportunity to avoid the Level 5 charges and permanent dismissal if they agreed to accept a 30-day suspension, 18 months probation (a Level 3), and agreed to attend an anger management

program.  Mr. Fox accepted the offer.  Plaintiff declined it because he felt he had done nothing wrong to warrant a Level 5 charge.  As Mr Chastain was arguably acting in a union representative capacity during the incident, Union Pacific offered a waiver to him which would reduce his discipline to a Level 1.  Mr. Chastain accepted the waiver.

Plaintiff's formal investigation lasted three days.  There were a total of seventeen witnesses and eight-five exhibits.  Director of Maintenance Processes Diana Anderson from Union Pacific's headquarters in Omaha, Nebraska was the hearing officer.  By letter dated July 25, 2005, Ms. Anderson informed Plaintiff that she believed the charges had been sustained based on the evidence at the investigation hearing and that his employment was terminated.

Pursuant to the applicable collective bargaining agreement, Plaintiff had a right to appeal this decision to a National Mediation Board.  Plaintiff's union appealed the decision to the National Mediation Board who upheld the findings.

During Plaintiff's deposition in this matter on September 1, 2006, he revealed that he had pled guilty to felony second degree battery of his step-son in 2003.  Union Pacific rules require that employees disclose felony convictions and the rule also prohibits any conduct that leads to the conviction of a felony.  At the time, Plaintiff's appeal of his termination to the National Mediation Board was still pending, and that appeal requested that the discipline be overturned and he be reinstated.  Union Pacific charged Plaintiff with a violation of the rule which required him to disclose his felony conviction to the company.  Ms. Anderson presided over another formal investigation, and determined the charge against Plaintiff was sustained.

Union Pacific filled Plaintiff's position with two electricians, one of which is African-American.

4

<u>Standard for Summary Judgment</u>

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds.  *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987);  Fed. R. Civ. P. 56.  The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry is the threshold inquiry of determining whether there is a need for trial -- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial of disputed factual issues.  *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979).  The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to demonstrate, *i.e.*, '[to] point out to the District Court,' that the record does not disclose a genuine dispute on a material fact.  It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion.  Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue.  If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted)(brackets in original)).  Only disputes over facts that may affect the

outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

Discussion of the Law

I.      Race Discrimination

Plaintiff claims he was terminated based upon his race, African-American, and in retaliation for complaints to management.  To establish a prima facie case of racial discrimination, Plaintiff must show: 1) he is a member of a protected class; 2) he met his employer's legitimate expectations; 3) he suffered an adverse employment action; and 4) similarly situated employees who were not members of the protected class were treated differently.  *Higgins v. Gonzales,* 481 F.3d 578, 584 (8th Cir. 2007).

The Court finds that Plaintiff has established the first three elements of a prima facie case of race discrimination.  He is a member of a protected class, he was meeting his employer's expectations as far as his work activity was concerned, and he was terminated.  However, the fourth element is problematic for Plaintiff.  There is no evidence in the record that similarly situated white employees were treated differently than the Plaintiff.  In fact, Plaintiff admits that in each instance where he was disciplined for engaging in argumentative, unprofessional behavior with a co-worker the co-worker received the same disciplinary action as the Plaintiff.  Therefore, Plaintiff has failed to establish a prima facie case.

Further, Defendants state that Plaintiff was terminated for disciplinary reasons not discriminatory reasons.  Plaintiff has failed to rebut this legitimate non-discriminatory reason for his termination.  Plaintiff admits he was disciplined on several occasions by the Defendant.  He was given an opportunity to accept a waiver and remain employed by Union Pacific as was Mr.

Fox who was also involved in the final incident.  Plaintiff refused to accept the waiver.  He was terminated and replaced by an African-American employee.  There is no evidence that Union Pacific's reason for terminating Plaintiff was a pretext for discrimination.

II.    Retaliation

In a retaliation claim, the Plaintiff bears the burden of establishing a prima facie case.  To establish such a claim, Plaintiff must show: 1) he engaged in protected conduct; 2) a reasonable employee would have found the challenged retaliatory action materially adverse; and 3) the materially adverse action was causally linked to the protected conduct.  *Burlington Northern & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2415 (2006); *cf. Singletary v. Mo. Dept. of Corrections*, 423 F.3d 886, 892 (8th Cir.2005) (articulating old standard where, to satisfy the second prong, the plaintiff was required to show he suffered an adverse employment action). "The defense may rebut a plaintiff's claim by advancing a legitimate, 'non-retaliatory reason for the adverse employment action.'" *Gilooly v. Mo. Dept of Health and Senior Services*, 421 F.3d 734, 739 (8th Cir. 2005).  "If the defendant can show a legitimate reason, the plaintiff must show that the given reason was only a pretext for discrimination."  *Id.*

As for the first prong of the analysis, the Court finds that Plaintiff engaged in protected conduct when he complained to management about the presence of vehicles with rebel flag license plates.  Further, Plaintiff and other African-American employees met with Union Pacific management to discuss the lack of promotion opportunities for African-Americans.  In these instances, Plaintiff was engaging in protected activity.  However, Plaintiff also complained to management about radios playing too loudly in his work area.  There is no evidence that these complaints were based upon race, and therefore, are not considered protected activity.

7

As for the second prong of the analysis, Plaintiff has failed to show that he suffered any materially adverse action by Union Pacific due to his complaints.  "Because '[t]he scope of the anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm,' a plaintiff need not show an adverse employment action related to the terms and conditions of employment."  *Higgins v. Gonzales,*  481 F.3d 578, 589 -590 (8th Cir. 2007)(quoting *Burlington Northern*, 126 S.Ct. at 2414).  Instead, "the challenged action must be materially adverse, which in the context of a retaliation claim means that it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* (citation and internal quotation marks omitted).  The *Burlington* standard is objective requiring the Court to consider whether a reasonable employee in the Plaintiff's position might have been dissuaded from making a discrimination claim because of the employer's retaliatory actions. *Id.* at 2412-13.  The Supreme Court has explained the action against the plaintiff must still be "materially adverse" noting: "[w]e speak of material adversity because we believe it is important to separate significant from trivial harms," *Id.* at 2415, and "Title VII ... does not set forth 'a general civility code for the American workplace.' " *Id.* (quoting *Oncale v. Sundowner Offshore Servs., Inc.,* 523 U.S. 75, 80, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998)). As such, certain behavior continues to be non-actionable under the retaliation provision such as "petty slights or minor annoyances that often take place at work and that all employees experience," "personality conflicts at work that generate antipathy," and "snubbing by supervisors and co-workers." *Burlington*, 126 S.Ct. at 2415.

Plaintiff claims that Union Pacific placed additional supervisors in his work area to watch over him, subjected him to disciplinary action based on alleged disruptive behavior and,

ultimately, terminated him for disciplinary reasons in retaliation for his complaints.  Plaintiff

admits, however, that each of the arguments for which he was disciplined actually happened and

that his co-workers were also disciplined for their involvement in the disagreements.  There is

evidence that Union Pacific placed additional supervisors in Plaintiff's work area during

Plaintiff's shift.  However, there is no evidence that Union Pacific limited its supervision to

Plaintiff.  In fact, the evidence shows that all of the employees were watched and, in some

instances, reprimanded.   These actions do not constitute materially adverse actions by

Defendant.  Union Pacific's termination of Plaintiff's employment, however, is a materially

adverse action.

> Under the *Burlington* standard, Plaintiff must show that his termination was causally

connected to his complaints regarding the license plate or lack of promotion opportunities.

There is no evidence of this causal connection in the record.

> The evidence merely shows that management stepped in to diffuse the conflicts between

Plaintiff and his co-workers over radios.  Plaintiff complains that his co-workers deliberately

provoked him after the radio controversy by allegedly spitting on him, causing the cab of a

locomotive to fill with smoke, and placing his break table in the dumpster.  While the Court does

not condone this conduct, employees are not "employers" for purposes of liability under Title

VII.  *Lenhardt v. Basic Institute of Technology, Inc.*, 55 F.3d 377 (8th Cir. 1995).  The evidence

shows nothing more than "personality conflicts at work that generate antipathy" which is not

actionable in federal court.  *Burlington*, 126 S.Ct. at 2415.

> In conclusion, the Court finds that Plaintiff has failed set forth a prima facie case of race

discrimination.  The Court also finds that Plaintiff has failed to set forth a prima facie case of

retaliation.  Plaintiff has not shown he was subjected to materially adverse action which was causally connected to his complaints to Union Pacific.  Accordingly, Defendant's Motion for Summary Judgment (Docket # 65) is GRANTED.  The Clerk is directed to close the case.

IT IS SO ORDERED this 12th day of September 2007.

James M. Moody
United States District Judge